W. M. SHARPNACK, Appellant, v. F. W. SCHWERTLEY, Appellee.

**SALES: Rescission Without Demand or Tender.** One who has contracted to sell corn, under the agreement that the buyer will immediately

cause the corn to be shelled and immediately accept delivery, may, on failure of the buyer to perform his said agreement, rescind the contract, without demand upon the buyer or tender of delivery to him.

*Appeal from Harrison District Court.*—SHELBY CULLISON, Judge.

FEBRUARY 9, 1921.

ACTION at law to recover damages for an alleged breach of contract. Trial to a jury. Verdict and judgment for defendant. —*Affirmed.*

*C. W. Kellogg,* for appellant.

*John P. Organ,* for appellee.

PER CURIAM.—The plaintiff is a grain buyer at the town of Modale, Iowa, and defendant a farmer, at or near the same place. Plaintiff alleges that, on December 30, 1916, he entered into an oral contract with the defendant, by which defendant sold and agreed to deliver to him at Modale 2,000 bushels of corn, at the stipulated price of 83 cents per bushel; and that, at the same time and as part of the same transaction, he then and there paid defendant the sum of $100, to apply on the agreed consideration for such purchase. Plaintiff further alleges that no time for delivery of the corn was fixed in the agreement of sale, and that thereafter, on June 4, 1917, he demanded such delivery, which was refused by the defendant, whereby he says he has been damaged to the amount of $1,440, being the difference between the agreed purchase price and the market value of the corn at Modale at the date of defendant's refusal to make delivery.

The defendant admits that he did agree to sell plaintiff 2,000 bushels of corn at 83 cents per bushel, and received $100 on the agreed price. He avers, however, that the agreement was for immediate delivery, and that, as a part of the same agreement, plaintiff agreed to have his son shell the corn within a very few days, except 500 bushels, which were in the possession of a tenant, who would deliver it in the ear. Defendant further says

that, at the time the agreement was made, he was about to leave home for the south, and it was agreed between the parties that the corn should be immediately delivered, and the purchase money deposited in the bank to defendant's credit, in order that he might have the benefit thereof to meet the expenses of his trip; that plaintiff neglected to have the corn shelled as agreed, and refused to receive the 500 bushels of ear corn; and that, upon plaintiff's refusal to carry out their agreement, he (defendant) terminated it and offered to return the $100 received on the contract, but that plaintiff refused to accept it.

The agreement between the parties was not in writing, and there appears to have been no other person present at the time it was made. Their respective versions of the terms of the contract as pleaded differ quite materially, as also does their testimony as witnesses on the trial. In so far as this conflict in the evidence involves any question of veracity of the witnesses or the comparative weight or value of such evidence, the jury seems to have found for the defendant, a finding with which the court cannot interfere.

The demand for a reversal is grounded upon several propositions.

I. In his testimony, plaintiff stated that, when the contract was made, defendant asked him if he had the money to pay for it, and that, in reply, he said, "I am pretty well tied up now; my elevator is full, and I cannot handle anything." This answer was stricken out as incompetent and not responsive to the question asked, and upon this ruling error is assigned. It is difficult to understand the theory on which it can be said that this was prejudicial to the appellant; but, if the evidence was of any value to him, he appears to have had the full benefit of it, for, when recalled to the stand, he repeated, with added emphasis, the statement which had been stricken out. He also said that, after defendant returned home, along in March, he was still hampered by inability to get cars. The trial court sustained defendant's objection to evidence to the effect that plaintiff, before contracting for defendant's corn, had recently bought other corn from other customers, and was unable to get the cars with which to market it. The testimony was properly excluded. The rights of the parties to this action are to be de-

termined by the stipulations of their own contract; and, if the sale was made for immediate delivery, the fact that plaintiff could not get cars enough to enable him to handle it would not excuse performance on his part, and defendant, in such case, would not be bound to wait indefinitely for plaintiff to be relieved from his handicap of car shortage. On the other hand, if his agreement was to take the corn only when he should succeed in getting the cars needed by him, then defendant could not escape liability for refusing to perform until plaintiff had reasonable opportunity to obtain shipping facilities. But in neither event is the fact that plaintiff had already bought a large quantity of corn from other customers a material factor in the situation.

II. Appellant argues his case on the theory that there was no question for the jury as to the terms of the contract. In this we think counsel err. The questions as to whether the time for delivery was agreed upon, whether it was to await plaintiff's relief from the car shortage of which he complains, or was to be made immediately, or whether plaintiff was to shell the corn or procure it to be shelled within a few days, to prepare it for delivery, are all matters upon which there is an issue in the pleadings and dispute in the testimony, and the court did not err in allowing the jury to find what the agreement in fact was.

Assuming that the jury found that, when defendant left home, it was with the agreement on plaintiff's part that he would procure a sheller to shell the corn within a very few days, and would then receive it and pay the money into the bank for plaintiff's use, and that plaintiff refused or failed to perform his agreement, we think there is no rule of law which required defendant to make any demand upon plaintiff or tender of delivery, to enable him to repudiate the contract or to avoid liability for damages. It would be radically unjust, in the absence of a clearly expressed or clearly proven agreement, that defendant should be compelled to hold the corn for five months for the benefit of plaintiff, while the market value of the grain soared from 83 cents to $1.55, and penalize him for this margin of nearly $1,500 for not making or offering to make a delivery which plaintiff admits he would have been unable to accept, had it been made. Under the contract as claimed by the defendant,

and as his testimony tends to show it to be, the duty to make the next move was on the plaintiff, who had undertaken to have the corn shelled. That he, defendant, so understood the agreement at the outset, and at a time before the rising market offered any inducement to recant his bargain, is shown by the admitted fact that, about the middle of January, he sent to his banker, with whom the purchase price was to be deposited, for a remittance of the fund, in whole or in part. And the situation with the plaintiff is to some extent revealed by his testimony with reference to this incident.

"Along about the middle of January, Mr. Sassaman, the cashier of the bank, came there and told me that Mr. Schwertley wanted his money for the corn. I told him that I had not taken that corn yet. I had not got the corn because I cannot handle it. I cannot get the cars. He informed me that he. came for Mr. Schwertley, and at his instance, to get the money for the corn that he believed was delivered. And I told him I had not taken the corn, because I could not get cars. When Mr. Schwertley came home in March, I told him I had not taken the corn, on account of not being able to get cars."

The case presented turns upon disputed questions of fact, rather than of law, and those questions have been determined by the jury, adversely to the plaintiff. We find no reversible error in the record, and the judgment of the district court is—

*Affirmed.*